(91 South. 586)

## LITTLE CAHABA COAL CO. v. ARNOLD.
(2 Div. 717.)

(Supreme Court of Alabama. Nov. 10, 1921.)

1. **Trial ☞203(1)—Pleas could not be disregarded in instructions where eliminated by demurrers, but refiled after amendment of complaint.**

Where pleas, though eliminated by demurrers, were refiled after plaintiff amended her complaint, and issue was joined thereon, the pleas were in the case, and could not be disregarded by the court in giving instructions.

2. **Master and servant ☞291(4)—Instructions held erroneous as not stating issue of negligence.**

In an action for death of a miner struck by a rock from the roof of a mine, in which the issue was whether there was a defect which arose from, or had not been discovered or rem-

edied owing to, the negligence of the employer, instructions stating the issue *held* erroneous in stating that plaintiff contended that defendant was negligent in not discharging its duty "to furnish plaintiff's intestate proper plant, machinery, ways, and works in which to work."

3. **Trial ☞253(4)—Instruction held erroneous as denying theory of plea of contributory negligence.**

An instruction stating the issue of contributory negligence, which stated that it was defendant's contention under its pleas of contributory negligence that the employé met his death "without any fault or negligence on the part of the defendant whatever," *held* erroneous as denying the theory and efficacy of the pleas.

4. **Trial ☞253(4)—Instruction erroneous as excluding defense.**

In action for death of a coal miner killed by fall of rock from roof, in which defendant claimed that employé was contributorily negligent in not discovering that the roof was not in proper condition, though it was his duty to so do, instruction authorizing a verdict for *plaintiff under certain conditions held* erroneous, in that it excluded such defense from consideration.

5. **Master and servant ☞103(2)—Injury to miner charged with duty of making place safe not actionable.**

If a coal miner himself was charged with the duty of investigating the condition of the roof of the mine, and of making it safe, the employer was under no duty to do so by any other servant, and would not be liable for the death of the miner struck by a rock from the roof.

6. **Master and servant ☞293(16)—Instruction on failure to discover defective condition without regard to negligence in remedying condition, held erroneous.**

In an action for death of a coal miner struck by rock from the roof of mine, instruction predicating liability upon mere failure of employer to use reasonable care in discovering the defective condition, without regard to the question of its negligence in remedying such condition, *held* erroneous.

7. **Evidence ☞364, 383(11)—Mortality tables not conclusive proof of expectancy, but admissible as evidence.**

American mortality tables are not conclusive proof of the expectancy of human life in particular cases, but are admissible simply as evidence to which the jury may look in connection with other relevant facts.

8. **Trial ☞295(1) — When charge presents erroneous and inconsistent statements which are material, it is ground for reversal.**

Where all the parts of the charge, when read together, are consistent with legal propriety, the fact that one, considered alone, is incomplete or misleading, will not ordinarily justify a reversal of the judgment; but, when the parts present complete statements applicable to the issues which are wholly repug-

nant to each other, though some of them are correct, the erroneous statements, if material and prejudicial, are ground for reversal, since it can never be known which of the conflicting instructions impressed the jury the more.

## 9. Trial ⬤⟶277—Any part of context which is dependent to matter objected to may be included within matter excepted to.

It is proper to include in the matter excepted to any part of the context which is dependent, and which enters into the main statement, and is necessary to its completeness and intelligibility.

Appeal from Circuit Court, Bibb County; F. Lloyd Tate, Judge.

Action by Emma Arnold against the Little Cahaba Coal Company, for damages for the death of her husband. Judgment for the plaintiff, and the defendant appeals. Reversed and remanded.

Plaintiff's husband, 23 years of age, was a coal miner of several years' experience, and while at work in defendant's mine, where he was employed in driving a dip heading, was killed by a fall of rock from the roof of the mine.

The complaint as originally drawn up contained four counts. Demurrers of the defendant were sustained to count 1, and plaintiff amended the complaint by withdrawing counts 2 and 4, and increasing the amount sued for from $3,000 to $10,000. This left in the case for submission to the jury only count 3. Count 3 contained the usual allegations with reference to employment, and further alleged that plaintiff's intestate was killed by a rock from the roof of the mine, and that his death was proximately caused by reason of a defect in the condition of the ways, works, machinery. or plant of the defendant, which said defect arose from, or had not been discovered or remedied owing to, the negligence of the defendant or of some person intrusted by it with the duty of seeing that the ways, works, machinery or plant were in proper condition, which defect consisted in this: That the roof of the mine at the place from which the rock fell and struck plaintiff's intestate was defective.

The defendant filed nine pleas, the first being the general issue. Plea 2 averred that plaintiff's intestate was himself the servant intrusted by defendant with the duty of seeing that the roof of the mine was in proper condition. Plea 3 charged that the intestate negligently failed to examine the roof before going to work thereunder. Plea 4 alleged that plaintiff's intestate was guilty of contributory negligence, in that, with knowledge of the defective roof. and with knowledge that the same would likely fall and injure him, he negligently worked thereunder. Plea 5 charged contributory negligence by alleging that the intestate negligently failed to examine the roof. Plea 6 charged contributory negligence, in that the plaintiff's intestate was under the duty to examine the roof in a prudent and careful manner to see if same was safe before going to work thereunder, and that he negligently failed to examine the roof in such manner. Plea 7 alleged that, while the intestate was engaged in removing coal from under the roof, he removed some coal from under the rock, and rendered the same dangerous and liable to fall unless it was propped up or taken down, and that he negligently failed to prop or support the rock or take it down before working thereunder, or he negligently worked thereunder without propping or supporting said rock or taking the same down. Plea 8 charged contributory negligence, in that the plaintiff's intestate failed to provide himself with props with which to support the roof, or negligently failed to take down the rock which was loose, or negligently attempted to dig coal out from under the rock without first providing himself with props or taking the rock down. Plea 9 alleged that plaintiff's intestate, with knowledge that the roof where he went to work was defective, and that a rock in the same was dangerous and loose, and likely to fall and injure any person walking thereunder, voluntarily and negligently went to work thereunder.

Some of these pleas were ruled out upon demurrers of the plaintiff, but, after the sustaining of some of plaintiff's demurrers and the overruling of others, plaintiff amended the complaint as already indicated by withdrawing two of the counts and increasing the amount claimed. Thereupon the judgment entry recites the defendant refiled its demurrers to the amended complaint, and the court overruled these demurrers, the defendant refiled its pleas Nos. 1 to 9, inclusive, and issue was joined by the plaintiff upon these pleas. The effect of the amendment of the complaint and the refiling of the pleas and the joining of issue thereon was the submission to the jury of only count 3 and each of defendant's pleas as an answer to this count.

It appears from the testimony of the plaintiff's witness Frank that early on Monday morning, the day of the accident, intestate, Arnold, told him that a fall had occurred, which fall was at a point 100 feet beyond Arnold's working place, in the dip, and had occurred after the close of the work on Saturday previous, and told him to take a car on to the fall. After making a shot where he was working, Arnold went down to the fall, which was a fall of a side rib supporting the roof, and was about a car of coal and rock, and examined and sounded the roof with a shovel handle, and remarked that it sounded tolerably well. Arnold then went to work under the rock, loading the

fallen material, and in about 10 minutes the rock fell on him from the roof. The witness further testified that the condition of the rib or the wall of the entry just prior to the time it fell down was all cracking open and crumbling in, holes all behind it; that the cracks were pretty big, and that, crumbling in, it was liable to fall at any time; that condition would have the tendency to let the roof fall in any time, and any one could see the condition walking along, and that that was the condition of the rib where Arnold went to work before it fell on him; that Arnold went to work in that place, and when he went to work the rib had already fallen; that the fall the night before took the support away from the rock overhead that Arnold worked under; that the rib of the entry fell the night before, and when it fell it left this rock hanging without any support, and liable to fall any minute; that there was nothing to hold the rock that he (Frank) saw; that you could see the rock and could see that there was an unsupported rock in the top, and that this condition was open to a man passing along; that that rock was likely to fall any minute; that he (Frank) knew without any practical experience as a miner that it was likely to fall any minute; that this was his knowledge, and he could tell this from being driver; that Mr. Arnold had used a shovel handle to sound this rock, and said that it sounded tolerably safe.

The witness further testified that he heard the mine foreman, Mr. Fullman, tell Arnold to run the heading when there was no timber man to do it. By running the heading, Frank testified that the man running the heading took the place of the timber man—that is, that he was doing the work a timber man would do. A timber man cleans up the falls in the heading or entry, takes down all loose or dangerous rock, and props up the rock that cannot be taken down. There were only three working places in the eighteenth west entry and on the day that Mr. Arnold was killed his place was the only one working in the heading. There had been no work in the mines on the Sunday previous, and it was not necessary to have the entry cleaned up beyond Mr. Arnold's dip heading. No one except Arnold and Frank knew of the fall before Arnold was killed. Seth Thompson, state mine inspector, testified that a man running a heading had to clean up the fall, examine the top, and, if he found loose rock, pull it down or timber it up.

Defendant duly excepted to the following portions of the oral charge given to the jury:

"Plaintiff contending that defendant was negligent in that it did not discharge its duty as the law requires of it to furnish plaintiff's intestate, proper plant, machinery, ways, and works in which to work, and that by reason of its negligence in the furnishing of such plant he met his death."

"It is contended on the other hand by the defendant that it was not guilty of any negligence at all, known as the general issue, just denies everything charged in the complaint, and in addition thereto files certain special pleas which set up contributory negligence and assumption of risk, which the defendant says, if the plaintiff's intestate met his death at all—it is not denied, however, that he did meet his death in the mines—that it was without any fault or negligence on the part of the defendant whatever; if he did meet his death at all it was due to his own negligence or his assuming a risk which and as a direct or proximate cause thereof resulted in his death."

"If he did that—made that examination—as a reasonably prudent man would have made it, and found it safe, and then went on to work, then the defendant would not be liable for his death, unless you further find from the testimony that the defendant corporation itself knew of the dangerous condition of that place, or had reasonable cause to know it, having discharged its duty; it being burdened with the duty to use reasonable care and prudence to ascertain the condition of its plant."

"Now, if you find from the testimony in this case that the plaintiff's intestate had a right to be in this particular place under his employment, and was there to discharge the very duty which the law put upon him in making such investigation as was necessary, and as a careful and prudent man would have made under similar circumstances—a reasonably careful and prudent man—and, in other words, was not guilty of any negligence on his own part, then he would be entitled to recover, provided the accident which caused his death or the injury which resulted in his death resulted as a direct and proximate consequence of the negligence of his employer or some agent, servant, or employee intrusted with the duty to see that the ways, works, machinery or plant were in proper condition when, as a matter of fact, they were not in proper condition, and they knew it, or were in possession of such facts as that it was their duty to know it."

"If they were in that condition, a duty devolved upon them to know it, or they should have known it to comply with the duty the law put upon them, and they permitted him to go there to work, even though he may have made such a reasonably prudent examination as a reasonably prudent man would have made, and it may have appeared safe to him, and then he met his death, then the corporation would be liable provided they knew of the conditions themselves."

"In this case there being no dispute that the expectancy of the deceased was 40 years."

David S. Anderson and Frank Dominick, both of Birmingham, and J. T. Ellison, of Centerville, for appellant.

The court erred in its oral charge to the jury, relative to the duty of the defendant to the plaintiff's intestate. 93 Ala. 418, 9 South. 720; 85 Ala. 269, 4 South. 701; 101 Ala. 488, 13 South. 793; 90 Ala. 5, 7 South. 823; 167 Ala. 249, 52 South. 827; 14 Ala. App. 232, 69 South. 311; 186 Ala. 160, 64 South. 753. The duty of the master with reference to a defect is the same at common law as

under the statute. 163 Ala. 244, 50 South. 926; 85 Ala. 269, 4 South. 701; 181 Ala. 552, 61 South. 924; 16 Ala. App. 578, 80 South. 152; 95 Miss. 611, 49 South. 835.

The court erred in its charge as to contributory negligence. 33 Fla. 217, 14 South. 730, 39 Am. St. Rep. 127; 124 Ala. 372, 26 South. 880; 192 Ala. 576, 69 South. 9; 10 Michie's Dig. 577. It was the intestate's duty to timber or take down the dangerous rock, and in doing so the danger was evident. 1 Ala. App. 124, 55 South. 931; 193 Ala. 639, 69 South. 78; 96 Ala. 396, 11 South. 436; 94 Ala. 143, 10 South. 87; 159 Ala. 367, 49 South. 99; 16 Ala. App. 578, 80 South. 152. The court erred in its charge as to the measure of damage. 97 Ala. 165, 11 South. 887; 42 La. Ann. 705, 7 South. 897. It was the intestate's duty to examine the roof before going to work thereunder. 202 Ala. 3, 79 South. 301; 202 Ala. 498, 80 South. 882; 177 Ala. 406, 59 South. 255; 183 Ala. 127, 62 South. 536; 192 Ala. 651, 68 South. 1008; 16 Ala. App. 455, 78 South. 718.

Riddle & Ellis, of Columbiana, for appellee.

Pleadings will stand as originally settled. 183 Ala. 255, 62 South. 871; 174 Ala. 657, 56 South. 1013. The oral charge of the court must be considered as a whole, and if, when so considered, it is substantially correct, excerpts therefrom will not bring about a reversal. 83 Ala. 68, 3 South. 743; 154 Ala. 65, 45 South. 680. The bill of exceptions does not contain the order of the court on the motion for new trial, and hence that matter is not presented for review. 17 Ala. App. 78, 81 South. 856; Acts 1915, p. 722. Under the evidence in this case the question of negligence was one properly submitted to the jury. 174 Ala. 616, 56 South. 997, 40 L. R. A. (N. S.) 890.

SOMERVILLE, J. [1] The judgment entry shows that defendant's pleas numbered 1 to 9, including several which had been eliminated by demurrers sustained, were all refiled after plaintiff amended her complaint, and that issue was joined on all of them. Under this recital, all of the pleas were in the case, notwithstanding that demurrers had been sustained to some of them when originally filed; and, in so far as any of them were supported by the evidence, it could not be disregarded by the trial court in its instructions to the jury upon the issues before them.

[2] In stating to the jury the respective contentions of plaintiff and defendant, the trial judge clearly erred to the prejudice of defendant. It was not defendant's duty "to furnish plaintiff's intestate proper plant, machinery, ways, and works in which to work," and such an issue was not presented by the complaint. The real issue was whether or not there was a defect in the roof of the mine which "arose from or had not been discovered or remedied owing to the negligence of the defendant," etc. Owen v. A. G. S. R. Co., 181 Ala. 552, 61 South. 924.

[3] So, also, it was not defendant's contention, under its pleas of contributory negligence, that the intestate met his death "without any fault or negligence on the part of the defendant whatever," and that statement of the issue in effect denied the theory and efficacy of those pleas entirely. If the jury accepted these statements of the issues, and concluded upon them as stated—and there is nothing to show that they did not—the result was necessarily a false verdict.

[4] That part of the charge numbered 5 was erroneous in that it authorized a verdict for plaintiff under conditions which, if defendant's second plea was true, would not entitle plaintiff to a verdict. Maddox v. Chilton Mdse. & Mfg. Co., 171 Ala. 216, 55 South. 93; Warrior River Coal Co. v. Thompson, 193 Ala. 639, 69 South. 76. The charge excluded the plea from consideration, and was necessarily prejudicial.

[5, 6] That part of the charge numbered 7 is erroneous for the reason just above stated, viz. if intestate was the servant whose duty it was to investigate the condition of the roof in question, and make it safe, then defendant was under no duty to do so by any other servant, and its neglect to do so would not render it liable for the result here complained of; an issue presented by the second plea, which was substantially supported by some of the testimony. It is erroneous also in predicating liability upon the mere failure of defendant to use reasonable care in discovering the defective condition of the roof, without regard to the question of its negligence in remedying that condition. Seaboard Mfg. Co. v. Woodson, 94 Ala. 143, 10 South. 87; U. S. Rolling Stock Co. v. Weir, 96 Ala. 396, 11 South. 436; Tuck v. L. & N. R. R. Co., 98 Ala. 150, 12 South. 168; L. & N. R. Co. v. Lowe, 158 Ala. 391, 48 South. 99.

The same criticisms apply to that part of the charge numbered 9.

[7] Inasmuch as the American mortality tables are not conclusive proof of the expectancy of human life in particular cases, but are admissible simply as evidence to which the jury may look in connection with other relevant facts (B'ham Mineral R. Co. v. Wilmer, 97 Ala. 165, 11 South. 887; Mary Lee C. & R. Co. v. Chambliss, 97 Ala. 171, 11 South. 897), the statement of the trial judge that there was no dispute that intestates' expectancy was 40 years was clearly erroneous, and very probably prejudicial.

[8] It is insisted for the appellee that, when the oral charge is read as a whole, the portions excepted to cannot be held as erroneous. It is true that there are state-

ments in the charge which present some of the issues correctly, but the faulty statements predominate, and we are satisfied that the jury were misled as to the issues and principles upon which they were to render their verdict. Where all the parts of a charge, when read· together, are consistent with legal propriety, the fact that one part, considered alone, is incomplete or misleading, will not ordinarily justify a reversal of the judgment. But when the parties present complete statements applicable to the issues, which are wholly repugnant to each other, though some of them are correct, the erroneous statements, if material and prejudicial, must work a reversal of the judgment, since it can never be known which of the conflicting instructions impressed the jury the more, or which of them they followed.

[9] It is insisted, also, that, even if the parts excepted to by defendant contained erroneous statements, yet the exceptions were too broad, in that they included in the units excepted to some statement or statements that were correct, as held in Gilley v. Denman, 185 Ala. 561, 64 South. 97; Shirley v. Ezell, 180 Ala. 352, 60 South. 905, and many other cases.

That principle, however, is not to be so applied as to require the exceptor to split into fragments a complete statement, though it may contain dependent clauses which, standing alone, and stated independently, would be entirely correct. On the contrary, it is proper to include in the matter excepted to any part of the context which is dependent, and which enters into the main statement, and is necessary to its completeness and intelligibility.

Thus tested, the excerpts from the oral charge above reviewed cannot be saved against the exceptions upon the principle invoked.

For the errors noted, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.