231 So.2d 316

LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Corporation

v.

A. W. RICHARDSON.

6 Div. 697.

Supreme Court of Alabama.

Jan. 29, 1970.

Lange, Simpson, Robinson & Somerville and John F. Debuys, Jr., Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee.

McCALL, Justice.

The appellee, the plaintiff in the court below, recovered a judgment against the appellant railroad in the sum of $10,500, under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. The railroad has appealed from this judgment and the order of the trial court overruling its motion for a new trial. The railroad's first contention on this appeal is that the injury complained of by the appellee is purely subjective in nature, and there being no expert medical testimony tending to show the permanency of the alleged injury, the actuarial figures based on the mortality table were not admissible in evidence. Collins v. Windham, 277 Ala. 129, 167 So.2d 690.

Mortality tables, showing at any age the probability of the duration of life, or life expectancy, and expert testimony relating to the present value of any loss sustained, are competent evidence, where the injury is permanent, to assist the jury in arriving at a fair recompense for the loss of what the injured person would otherwise have earned in his trade, and has been deprived of the capacity of earn-ing, by the wrongful act of the defendant. Vicksburg & Meridian R.R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Southern R.R. Co. v. Cunningham, 152 Ala. 147, 44 So. 658; Louisville & N. R. R. Co. v. Steel, 257 Ala. 474, 59 So.2d 664; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138. The mortality tables are not conclusive evidence of the life expectancy of a particular person, but are accepted only as an aid to the jury in connection with other relevant facts in arriving at the probable duration of the life of a person. 32A C.J.S. Evidence § 770, p. 85; Southern Ry. Co. v. Stallings, 268 Ala. 463, 107 So.2d 873. It is error to charge that a particular person of a given age has a life expectancy of a certain number of years, because the mortality tables are not to be treated as an absolute guide. Little Cahaba Coal Co. v. Arnold, 206 Ala. 598, 91 So. 586; Alabama Fuel & Iron Co. v. Minyard, 210 Ala. 299, 97 So. 918; Louisville & N. R.R. Co. v. Grizzard, 238 Ala. 49, 189 So. 203; Central of Georgia R.R. Co. McNab, 150 Ala. 332, 43 So. 222; Alabama Mineral R.R. Co. v. Jones, 114 Ala. 519, 21 So. 507.

During the trial of this case, a life insurance actuary testified that 4½% per annum was, in his opinion, the rate of interest that an average man, exercising reasonable diligence, could earn on reasonably safe investments in Alabama over a period of 41.17 years. He was then interrogated as to what amount of money it would take, invested at 4½% per annum, to produce an income of $100 per month, during a life expectancy of 41.17 years, so that at the end of that period of time, the entire principal and earned interest, compounded annually, would have been consumed at the rate of $100 per month. The answer of the actuary was $22,767.-96. If the calculations are on a basis of $200 per month, each figure would be twice as great, and, if the monthly income was $50 per month, the figures would be half as much. Other monthly incomes would be proportionate. One hundred dollars per month was used as a basis so that it could be increased or decreased de-

pending on the finding of the jury with respect to the extent of the appellee's loss of earning power. If he suffered no loss of earning capacity, the figure would be nothing. This was essentially the subject matter of the testimony by the actuary that the appellant objected to.

 The fact that the appellee worked for the appellant after the accident and for a considerable period of time prior to the trial was merely evidence for the jury to consider in determining whether or not his earning power had been impaired by the accident. Wages actually earned by an employee and his earning power are not the same. Louisville & N. R.R. Co., v. Steel, 257 Ala. 474, 59 So.2d 664.

The rule has been laid down by this court that when there is evidence from which there is a reasonable inference that a plaintiff's injuries will be permanent, actuarial figures based on mortality tables are admissible. Southern R. R. Co. v. Cunningham, 152 Ala. 147, 44 So. 658; Louisville & N. R.R. Co. v. Steel, 257 Ala. 474, 59 So.2d 664; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Collins v. Windham, 277 Ala. 129, 167 So.2d 690.

 The specific question before us is whether there is any legal evidence from which the jury could draw a reasonable inference that the appellee's injury was permanent. At the time of the accident, on June 8, 1965, the appellee was 25 years old, married and without a history of any previous mental disorder or prior serious illness He was a well nourished and physically well developed man, weighing some 193 pounds. He had been active in sports and outdoor life such as hunting and fishing. On the morning of the accident, the appellee was at the Gadsden yard office, seated in a chair with a slanted back and with rollers, but without arms. He was attending to his usual duties as an operator agent. As he arose from his chair to get a record book, he stepped on a match stick with his left foot, which caused him to slip on the tile floor. He lost his balance and fell backward, partially on the chair, in a twisted position. He testified that something popped in his back. At the time, he complained of pain to the acting yardmaster, his superior, who was present and witnessed the accident. The yardmaster testified during the trial at the instance of the appellant as to how the accident occurred. His testimony in this respect was about the same as that of the appellee.

The appellee was treated until June 25, 1965, as a hospital outpatient. He was initially away from his work from June 8, 1965, to June 18, 1965. He then returned and continued at his employment until October 6, 1965, when he was again off from his work because of his injury until February 26, 1966. He entered the hospital on November 16, 1965, and was confined there until December 8, 1965. He returned to work on February 26, 1966, and continued his employment up to the time of the trial, on June 6, 1968. While he was in the hospital, he was placed in traction with weights on his legs and was fitted with a back brace which he wore from time to time. Several physicians examined and treated him for his complaint of a back injury from the date of the accident to June 5, 1968. He had a myelogram test which was negative for an intervertebral disc. X-ray examinations and reports were also negative. He complained of pain with varying degrees of intensity, from severe to moderate, in his lower back from the time of his fall until the trial. At times, he described the pain as extending down into his legs.

Dr. Earle H. Conwell testified that he examined the appellee on December 7, 1966, and that he had limited rotation and "could not turn normally to the normal motion of the side," i. e., in and out. He had 25 to 30% limitation in this motion and 35% limitation on bending over. On physical examination of his left leg, he had limited rotation, painful when the doctor turned it in and out. The pain was radiating from the low back in and about the

left hip. He found a backache which was based on subjective information, and some areas of tenderness when he palpated and felt the patient's back. The doctor also testified, "There is one thing that I was rather positive about, and that was his resistance of any motion that I made on his leg that he—it was difficult for me to even turn the leg to normal rotation." Dr. Conwell's diagnosis was a lumbosacral and sacroiliac strain and sprain and that means a stretching or extension of the ligaments, which when of sufficient severity, in most instances, will produce muscle spasm. The doctor testified that the appellee had muscle spasm of the muscles that kept him from bending normally, some tightness or rigidity of the muscles themselves, but they were not pulsating or moving, a tightness. Dr. Conwell further testified that most of the patient's pain in the low back was subjective, that is to say: "That which the patient complains of," as opposed to objective, "Something objective that you can see or feel or detect by feeling, and something subjective is something the patient tells you." While the doctor's testimony is somewhat conflicting with respect to whether some of his findings were objective or subjective, he in no uncertain language testified that he found muscle spasms which were consistent with the complaint of pain that the appellee made. He further testified that the complaints of pain, that he had from the appellee, were consistent with the evidence he found, other than the appellee's complaints.

Dr. Conwell was asked the following questions: "All right sir. Based on the length of time since this man's injury that he has continued to complain of pain, do you feel that there will be any permanent degree of disability as a result of this accident?" He answered, "Well, it will be three and one-half years since I first saw this gentleman, and he still has a disability." He was then asked, "Well, based on that, Doctor, would it be your opinion that he would have a permanent disability?" He answered, "I can't say.

I wouldn't call it a permanent, but I feel like it's going to be a long time and going to be disabling for some time, and as he gets older, it's going to give him more trouble." He was then asked: "As he gets older, this condition will become more aggravated—A. Yes. Q.—than at the present? A. He'll have to be very careful in his activities." He was then asked, "All right, sir. Can you give any degree of disability which he has at the present time?" He answered, "Well, he—it's my opinion that he has about a 25 or 30% disability of his low back." He was asked, "At the present time?" He answered in the affirmative. He was asked, "Looking toward the future, Doctor, would you expect a significant improvement in that?" His answer was, "I don't think, certainly, he is not over 5%." He was then asked, "This would persist, do you think, permanently?" Thereafter, an objection was made resulting in the court asking the question, "Have you been asked that question, Doctor, and already answered it?" The doctor then answered, "He asked me if he had any permanent disabilities, and I said I didn't know." He was then asked by counsel for the appellee, "All right. You do say that as far as you can see ahead, though, that he will continue to have this present disability?" He answered in the affirmative.

Immediately thereafter appellant's counsel asked Dr. Conwell on cross-examination, "Your answer was—you can make it clear, but so there won't be any questions about it as far as permanent disability, you don't know about that?" He answered, "I can't say."

Dr. Thomas V. Magruder, Jr., who examined the appellee on June 29, 1965, found some soreness in the upper lumbar region, but no muscle spasms and no marks or abrasions. He found some limitation of motion when he bent forward and to the right. The patient complained of pain in the lower lumbar region that went down both legs. Dr. Magruder attended appellee on several occasions in July, August and

December 1965, and in February 1966. The appellee complained to the doctor of pain in his back in varying degrees. In December 1965, Dr. Magruder found some muscle spasm in appellee's back which he testified was an objective finding as distinguished from a subjective sign. He could not understand his subsequent finding of muscle spasm, but expressed the opinion that he thought the appellee was having trouble.

We think that the medical testimony presents a question of more than a mere possibility of permanent injury. In our opinion, the jury could draw a reasonable inference from the medical evidence that the injury is permanent, making the testimony of the actuary admissible. The court was fully justified in submitting this issue to theh jury. In Louisville & N. R.R. Co. v. Steel, 257 Ala. 474, 481, 59 So.2d 664, 669, a case involving a back injury, the court said:

"* * * This court has held that where there is evidence from which there is a reasonable inference that a plaintiff's injuries are permanent, the mortality tables are admissible. Southern R.R. Co. v. Cunningham, 152 Ala. 147, 44 So. 658. * * *

"* * * Tendencies of the evidence showed that the plaintiff had sustained a permanent injury. Under the Federal Employers' Liability Act the question as to whether the employee's injuries are permanent is generally a question for the jury and the extent of damages in such an action is peculiarly one of fact for the jury. Shelton v. Thomson, 7 Cir., 157 F.2d 709; Hannigan v. Elgin, J. & W. Ry. Co., 337 Ill.App. 538, 86 N.E.2d 388."

On this question, these additional cases are in point. Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830; Gray v. Cooper, 216 Ala. 684, 114 So. 139.

■ In considering the appellant's assignment of error No. 16, we will set forth the trial court's pertinent remarks to which exception was taken:

"* * * As to the accuracy of those figures, the Court knows that they're correct. So there's no ground for bias in the case.

* * * * * *

"* * * Those are things which the Court takes judicial notice of, those mathematical certainties, beyond the venture of a doubt."

After a brief interruption, the court continued:

"* * * This thing is a matter of mathematics. Now, whether they apply in this case or not, how it fits in this case, that's something else. I mean, whether he's entitled—whether the plaintiff is entitled to a penny or a large sum is something else to be decided by you. All I was speaking about was this type of question of, we'll call it, annuities and the amount of life expectancy of a person of a certain specified age, white male, are matters that the Court knows to be a fact."

The appellant argues that these statements by the court may be construed or interpreted in ways very prejudicial to the appellant. We are unable to agree with appellant's conclusion. Our interpretation of the court's statement is that the figures to which the court referred and which the court takes judicial notice of, were the "mathematical certainties." The court further limited the mathematical certainties to the annuities and the amount of life expectancy of a plaintiff of a certain specific age, a white male. We find no prejudicial error in the court's remarks.

■ By assignment of error No. 18, the appellant directs our attention to a statement made by the court during the opening final argument of the appellee's attorney. While opposing counsel was taking issue with the argument being made about the

Workmen's Compensation Act, the court interposed the following statement:

"* * * Under the Workmen's Compensation Law of the State, if an employee is injured by an accident arising out of and in the course of his employment, he is entitled to benefit regardless of whether there was any negligence on the part of his employer or on the part of the employee himself, whereas under this law, in order for the defendant to be liable, there must be negligence on the part of the defendant and, further, the law is that if the plaintiff—if there was negligence both on the part of the employer and employee, the amount of the damages to be awarded the plaintiff in an action of this kind would be produced—would be reduced in proportion to the amount of negligence contributable to the plaintiff, and an exception is allowed, of course, to that statement by the Court."

The appellant's attorney took no express exception to the statement and remained silent while the appellee's attorney continued his argument. So the only exception was that granted by the court ex mero motu. The appellant argues that the statement was an erroneous charge, because the court failed to include the aspect of "proximate cause" which is a necessary element where recovery is predicated upon a negligent injury.

There are two distinct statements of law in what the court said, the one dealing with recovery under the Workmen's Compensation Act, and the other, with recovery under the Federal Employers' Liability Act. The exception which was allowed by the court was general and directed to the entire statement. The appellant's attorney did not except to the portion of the statement he deems obnoxious. The portion of the court's statement relative to the Workmen's Compensation Act was essentially correct. Since the entire statement to which the exception was taken was not erroneous, the exception must fail. United

Insurance Company of America v. Ray, 275 Ala. 411, 415, 155 So.2d 514; McGough Bakeries Corporation v. Reynolds, 250 Ala. 592, 598, 35 So.2d 332; Alabama Steel and Wire Company v. Griffin, 149 Ala. 423, 42 So. 1034; 88 C.J.S. Trial § 420 a. p. 1144. The trial court covered proximate cause in its oral charge which followed shortly thereafter.

■ Assignment of error No. 34 presents the issue of excessiveness of the verdict. We feel that the case of Clark v. Hudson, 265 Ala. 630, 93 So.2d 138, will serve as authority both in law and fact to decide the question. There the issue was simple negligence in a personal injury and property damage action. The court declined to set aside a verdict for $11,000, awarded for a back injury of questionable permanency, physical pain and suffering, loss of earnings, property damage of $800 and medical expenses of $463. The court held that a jury award of damages cannot be disturbed unless so excessive or grossly inadequate as to indicate passion, prejudice, corruption or mistake.

In the present case, the appellee claimed a permanent back injury, pain and suffering of varying degrees from severe to moderate, extending over some three years, loss of about $2500 in wages, medical, hospital, appliance and medicine expenses of approximately $1,017.65. After considering all of the facts in this case and the decisions on the subject, we are unable to say that the verdict was the result of passion, prejudice, partiality or corruption on the part of the jury, especially when the trial court has refused to do so after hearing all the evidence. Southern Ry. Co. v. Stallings, 268 Ala. 463, 107 So.2d 873. We find no error in the record. The judgment is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, and MADDOX, JJ., concur.