SMITH v. ATLANTIC COAST LINE R. CO.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

No. 1169.

**1. LIMITATION OF ACTIONS (§ 127*)—EMPLOYERS' LIABILITY ACT—AMENDMENT OF COMPLAINT.**

Where the complaint, in an action by an employé against a railroad company to recover for a personal injury, commenced within two years after the injury occurred, alleged the facts and stated a cause of action of which the court had jurisdiction, an amendment, made after the expiration of such two years, alleging that defendant was engaged in interstate commerce, and that plaintiff was employed in such commerce at the time of his injury, so as to bring the case within Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), does not introduce a new cause of action, but only affects the defenses which may be made, and the action is not barred by the two years' limitation contained in section 6 of the act.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*]

**2. MASTER AND SERVANT (§ 228*)—ACTION UNDER EMPLOYERS' LIABILITY ACT —DEFENSES—CONTRIBUTORY NEGLIGENCE.**

Under Employers' Liability Act April 22, 1908, c. 149, § 3, 35 Stat. 66 (U. S. Comp. St. Supp. 1911, p. 1323), providing that "no employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé," a railroad company which fails to provide its cars with couplers conforming to the standard prescribed by Safety Appliance Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), is chargeable with negligence per se, and, if one of its employés in the discharge of his duty is injured in attempting to make a coupling with a defective coupler, it is not a defense to an action for such injury

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the plaintiff was negligent unless his negligence was the sole cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

3. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—EMPLOY-ERS' LIABILITY ACT—QUESTIONS FOR JURY.

Evidence considered, in an action against a railroad company for injury to an employé, based on Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), and *held* sufficient to require the submission of the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

On Cross-Writs of Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action at law by Keen D. Smith against the Atlantic Coast Line Railroad Company. Judgment for defendant, and both parties bring error. Reversed.

W. F. Stevenson and C. L. Prince, both of Cheraw, S. C. (James W. Johnson, of Marion, S. C., on the brief), for Keen D. Smith.

P. A. Willcox, of Florence, S. C., and B. A. Hagood, of Charleston, S. C. (F. L. Willcox, of Florence, S. C., on the brief), for Atlantic Coast Line R. Co.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

CONNOR, District Judge. Plaintiff is a citizen of South Carolina. Defendant is a Virginia corporation. The writ was issued March 8, 1910. In the original complaint plaintiff alleged: That on December 4, 1908, he was injured while in the employment of defendant railroad company, at Florence, S. C. That, while acting as yard conductor, under the order of Mr. Thorne, the yardmaster, his superior in authority, he was endeavoring to make a coupling of two freight cars; the coupler of one being "out of order." That, while so engaged, it became necessary, by reason of the defective condition of the coupler, to use his foot. That, in making the coupling, his foot was caught between the couplers and injured. He sues for damages, for the injury thus sustained. Defendant, in addition to a general denial of the material allegations in the complaint, relied upon the affirmative defenses of contributory negligence and assumption of risk. Pending the trial, the court permitted plaintiff to amend his complaint by alleging "that the train, upon which plaintiff was employed when the injury occurred, was engaged in interstate commerce." In the amended complaint, filed June 15, 1912, plaintiff, repeating the facts set out in his original complaint, alleged: That, at the time he sustained the injury, defendant "was the owner and operator of one or more lines of railroad, passing through the city of Florence, in the county of Florence and district aforesaid, and is employed in interstate commerce." That the train, upon which he was injured, by reason of the defective condition of the coupler, "was

called and known as the 'Wilmington Extra,' which was a train engaged in interstate commerce, running between Florence, S. C., and Wilmington, N. C." Defendant answered denying the essential allegations and averring that the injury sustained by plaintiff was caused by his gross negligence, and further that, by the terms of the act of Congress, commonly known as the "Employers' Liability Act," approved April 22, 1908, no action shall be maintained under that act unless commenced within two years from the date the cause of action accrued, and that, although the cause of action alleged in the complaint, accrued, if at all, on the 4th day of December, 1908, plaintiff did not bring an action, under the act in question, until the 15th day of June, 1912, and the defendant pleads section 6 of the Employers' Liability Act, above mentioned, in bar of this action.

At the conclusion of the evidence, defendant requested the court to instruct the jury to render a verdict for the defendant for that plaintiff's alleged cause of action, as set out in his amended complaint, was barred by the statute of limitations. The motion was refused, and defendant excepted and, upon its application for a writ of error, assigned such refusal as error. Upon the trial the plaintiff, in his own behalf, testified that on December 8, 1908, he was in the employment of defendant as yard conductor; had been in such employment about 2 or 2½ years; that he was ordered by the yardmaster, his superior, whose orders he was required to obey, to go down to the long yard and take the "Wilmington Extra"—a freight train, up to the long new yard—that this train runs from Florence, S. C., to Wilmington, N. C.—he coupled it up and sent the switchman to the rear and to hold off the brakes, went down to the front end himself, and coupled up, started out; after he got started and had gone some 15 or 20 car lengths, the check clerk came to him and said there was a car that did not belong on there. It was the duty of the check clerk to check up cars, giving numbers and initials, carrying them to the yard officer, the conductor, to see that no cars were there which did not belong there, and notify the man who was working the cars. He asked witness to throw the car out, said it went to Rocky Mount, that he threw it out, and came back to make the coupling. The rear and front ends of the train were uncoupled, about the middle. He described, by the use of a diagram, not in the record, where he was standing to make the coupling, the position and movement of the cars to be coupled, saying:

"Just as the cars came together, I saw one of the side plates under the drawhead was loose and dropped down a little, and that caused the bumper to turn a little to one side. It would not couple just like it was, and I did not have time to stop the engine to push it, and Mr. Thorne (the yardmaster?) ordered me to hurry out, that the conductor was checking up, and to get it out as quick as I could, and I pushed my foot against it to keep it from injuring the car any more."

He is asked, "What usually happens when they come back together without coupling?"

He answered, "Well, sometimes they would not couple, and then again they break, make a worse coupling"—that one was tilted to one side and would not couple in that shape. "I put my foot and shoved it into its place, so it would couple. My foot got caught between them. It crushed it all to pieces."

The nut had gone off an inch or two at the top, down to the bottom. That plate had dropped down. The purpose of the plate was to hold the drawhead. Had no means furnished to put it in place, so it would couple, without going in between the cars. Was instructed by Mr. Thorne to be in a hurry and get the train out. "He was my superior." He says that he saw no other way to straighten the bumper out before the cars came together; was not in a position to stop the engine before the cars came together; had hold of the grabirons when he pushed the bumper; the defect was in the plate which holds the drawhead up; the car was coming back; the knuckle was open. He further said: If the coupler had been in the ordinary position, as it was intended to work, they would match. This would not match because one was pushed too far to one side. It ought to work in the center. Saw the trouble when car was about 2½ feet from the other car. He says that he occasionally put his foot between cars to make coupling; had no rule book; never read any rule about coupling; put his foot in "to hurry the trains out." Mr. Thorne said there was a freight below; was trying to obey orders; one was a Janney coupler, the other, Town. The Janney does not couple automatically; bumper would not match; could see this. There was other testimony, both corroborative and contradictory. At the conclusion of the evidence, upon defendant's motion, the court directed a verdict for defendant. In granting the motion, the learned judge said:

"The plaintiff is entitled to the benefit of the act of 1908 under this complaint, and, as such, he is entitled to the benefit of the act of 1893, which is very strictly enforced; they are acts passed for the purpose of lessening the chances of injuries to employés, and they are, and very properly, very strictly enforced against the employers. I think that, when the employés understand that they have the benefit of this act, they are not themselves to recklessly ignore them and expose themselves to danger, which those acts were intended to free them from, etc."

Defendant sued out a cross-writ of error for the refusal of the court to instruct the jury that plaintiffs alleged cause of action was barred by the statute of limitations. The two writs were argued together.

[1] It will be convenient to dispose of the defendant's assignment of error first, as it is based upon a plea in bar and, if sustained, renders it unnecessary to consider plaintiff's writ of error. The learned judge, after taking into consideration defendant's motion, announced his conclusion, with his reasons therefor set out in the transcript. He was of the opinion that the amendment did not introduce a new cause of action; that the facts upon which plaintiff's cause of action were based were set out in the original complaint, the amendment simply alleging the interstate character of defendant's business and of the train upon which he was employed when he sustained the injury. We do not deem it necessary to say more than that we concur in the reasoning and conclusion reached by the learned judge below. The original complaint stated a cause of action. The District Court had jurisdiction by reason of the diversity of citizenship. To this cause of action, as stated in the complaint, defendant was entitled to interpose certain affirmative defenses. When, by the amendment,

the fact was developed that defendant was engaged in interstate commerce, and that the injury was sustained by plaintiff while employed on an interstate train of cars, defendant, by virtue of the federal statute, was deprived of these defenses. As said by Judge Smith:

"The statute does not deal with the cause of action, so far as negligence is concerned, at all, but with the defenses that may be allowed and the measure of the recovery."

The exception to the refusal to grant defendant's motion for an instruction that plaintiff's cause of action was barred by the statute of limitations cannot be sustained.

[2] Passing to a consideration of the plaintiff's assignment of error, a more serious question is presented. As the case is presented upon the record, it may be assumed that the bumper on one of the cars, to which plaintiff was directed to make a coupling, or rather to which it was necessary that a coupling should be made for the purpose of executing the order given him by the yardmaster, was in a defective condition; that it would not couple automatically; that, in order to make the coupling, it was necessary either that he should go between the cars or resort to some other means of making it. This condition of the car was violative of the provisions of the Safety Appliance Act (27 Stat. L. 531; 6 Fed. Stat. Anno. 752), which imposed the positive duty upon defendant to provide at all times, when used, in interstate commerce, its cars with automatic couplers—or couplers which would couple cars automatically, by impact. That this is a positive statutory corporate duty is well settled by abundant authority. This was recognized by the learned judge below. C., B. & Q. Ry. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582, where the decided cases are reviewed. By the provisions of the Employers' Liability Act (35 Stat. L. 66; Fed. Stat. Anno. [Supplement 1909] 584) § 3, contributory negligence, as a bar to an action by the employé, is abolished; it is relevant only on the question of damages. The section contains the proviso:

"That no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

A similar provision is found in section 4, relating to the defense of assumption of risk. It being shown that the coupler was defective, that is, did not conform to the statutory standard of efficiency and that, in endeavoring to make a coupling, the employé is injured, the sole question, left open, is whether such defective condition contributed to the injury; that is, whether the negligent conduct of the employé was the sole cause of the injury, or the violation of duty by the carrier was "in whole or in part" or a contributive cause thereof. It follows that, before the court may, in such cases, give a peremptory instruction for the defendant, or take the case from the jury, the evidence, taken in the light most favorable to the plaintiff, must exclude the conclusion that the violation of the Safety Appliance Act contributed to the injury. If the defective condition of the

coupler, and the act of the employé, although negligent, co-operated
to bring about the result, the latter is entitled to recover. The com-
mon-law principle controlling the right to recover, that is, that in the
negligent act of the defendant must be found the proximate cause,
or causa causans of the injury, is abrogated quoad cases coming with-
in the statute, and liability is made to depend upon the question wheth-
er such negligent act contributed "in whole or in part" to the injury.
This interpretation of the statute is adopted by the Circuit Court of
Appeals for the Seventh Circuit in Grand Trunk West. Ry. Co. v.
Lindsay, 201 Fed. 836, on page 844, 120 C. C. A. 166, on page 174.
On the rehearing it is said:

> "If under the Employers' Liability Act, plaintiff's negligence, contributing
> with defendant's negligence to the production of the injury, does not defeat
> the cause of action, but only lessens the damages, and if the cause of action
> is established by showing that the injury resulted in 'whole or in part' from
> defendant's negligence, the statute would be nullified by calling plaintiff's act
> the proximate cause, and then defeating him, when he could not be defeated
> by calling his act contributory negligence. For his act was the same act, by
> whatever name it be called. It is only when plaintiff's act is the sole cause—
> when defendant's act is no part of the causation—the defendant is free from
> liability under this act."

In the opinion on the original hearing, Judge Sanborn says:

> "Plaintiff did not assume the risk caused by the defective coupler. Merely
> going between the cars, therefore, was not negligence, if he used ordinary
> care in doing so. * * * It was negligence per se, for defendant to use the
> car having the defective coupler, even though the shoving of the cars together
> was accidental. * * * On the other hand, it was not negligent for plain-
> tiff to attempt to use the defective coupler, because the statute expressly pro-
> vides that he should not assume the risk by continuing to work after he knew
> the appliance was defective."

The facts in this record are, in several essential respects, so far as
the legal duties and liabilites are concerned, similar to those in Chi-
cago, etc., Ry. Co. v. Brown, 185 Fed. 80, 107 C. C. A. 300, affirmed
229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204. There, it was the
duty of the employé to uncouple cars; by reason of a defect in some
part of the coupler, plaintiff was unable to do so in the usual way.
He reached for the coupling pin on an adjacent coupler, his foot
slipped, and it was shoved into an unlocked guard rail and injured.
The District Judge instructed the jury that, in the conditions de-
scribed, plaintiff was not chargeable with contributory negligence, that
is, failure to exercise ordinary care for his own safety, by the mere
fact of going in between the cars to effect the uncoupling; he is re-
quired, before he can recover, to exercise ordinary care after he goes
between the cars and while he is there endeavoring to effect an un-
coupling, that is, the separation of the cars. In Gilbert v. B., C. R.
& N. R. Railroad, 128 Fed. 529, 63 C. C. A. 27, after defining the
statutory duty imposed upon railroad companies to provide their cars
with automatic couplers, the judge, writing the opinion, says:

> "The devolution of this duty upon the carriers necessarily imposed upon
> their servants the correlative duty of using the equipment thus furnished to
> them, and of refraining from going between the ends of the cars to couple or
> uncouple them unless compelled to do so by necessity."

In Brown's Case, supra, Grosscup, Judge, referring to this language, says:

"Upon the last sentence of this excerpt, the plaintiff in error particularly relies. In our judgment, 'the necessity' existed in the case under consideration; for in large yards, where safety appliances refuse to work, to let the cars go uncoupled, under the circumstances disclosed here, might result in blocking the operation of the whole road. * * * If there be contributory negligence at all, it depends, not upon his assuming the risk under the circumstances disclosed, but upon the degree of care with which he acts while in the performance of the work under the assumed risk."

It would seem that it was the purpose of Congress, as indicated in the language used in this statute, to provide that, if the carrier fails to provide its cars with couplers which conform to the prescribed standard, it is guilty of negligence per se; that if one of its employés, in the discharge of his duty, is injured, in attempting to make a coupling with such defective coupler, when the necessity for doing so exists, he may recover unless it appears that he was negligent in the manner of doing so, and that such negligence was the sole cause of the injury; or, to state the proposition from another viewpoint, in such case the carrier is liable if the defective coupler contributed to the injury. That is the sole question to be decided in such cases.

[3] The learned judge below was of the opinion that, upon plaintiff's evidence, or rather upon the whole evidence, taken most favorably for plaintiff, his act, in trying to make the coupling with his foot, was the sole cause of his injury. The exception presents this single question. Plaintiff was acting within the scope and sphere of his duty; he was obeying the order of his superior; he saw the moving car being backed towards the standing car to which it was necessary to be coupled, to take the train out of the yard; he was told to hurry it out. In this condition he saw that, by reason of the defective condition of the bumper, the coupling would not be made automatically; that either there would be failure to couple, or an injury done to the coupler. He did not have time, after seeing this condition, to signal the engine to stop, and undertook to make the coupling by putting his foot against the bumper, pressing it into a position which would result in making the coupling. Assuming that this was negligent, yet the question remains open whether this negligent act was the sole cause of the injury, or whether the defective condition of the bumper on the coupler contributed to the injury. If the jury should find that the fact of using his foot, under the conditions described, was not negligent, and that, in the manner in which he used it—that is, applied his foot—he was not wanting in ordinary care, he would be entitled to recover.

We are of the opinion that, upon the whole evidence, these questions were for the jury. While there is very much in the evidence to sustain the conclusion reached by the judge, we think that it was not so clear as to be resolved into a question of law. It was a question for the jury. There was much testimony which, if true, contradicted plaintiff, in respect to the condition of the coupler and otherwise. The learned judge did not pass upon the weight of the evidence. Upon the record, as presented to this court, we are of

the opinion that plaintiff was entitled to have his case submitted to the jury. For the reasons herein given, the plaintiff's exception is sustained.

The judgment is reversed, and a new trial directed.

Reversed.