<hr/>

(106 So. 242)

**ALABAMA GREAT SOUTHERN R. CO. v. CORNETT. (6 Div. 322.)**

(Supreme Court of Alabama. Oct. 22, 1925. Rehearing Denied Nov. 19, 1925.)

1. **Master and servant** ⬅228(2) — **Contributory negligence not bar to recovery under federal acts.**

In action for compensation for death of switchman under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), contributory negligence is not a defense, and refusal of charges as to rules of defendant as affecting deceased's conduct and defendant's liability and exclusion of evidence as to rules *held* not error.

2. **Master and servant** ⬅111(1½)—**Failure of coupler to work held to sustain charge of negligence under statute.**

Failure of coupler to work when required or necessary will sustain a charge of negligence or failure of duty, under federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), as the safety appliance must be duly maintained in condition for operation.

3. **Master and servant** ⬅285(7) — **Evidence sufficient to show that failure of coupler to work was proximate cause of switchman's death.**

In action for death of switchman under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), evidence that failure of coupler to work when necessary was proximate cause of death *held* sufficient for jury, notwithstanding evidence that his fall between cars might have been caused by a frog on the track.

4. **Negligence** ⬅136(25)—**Proximate cause is for jury.**

Causal connection or proximate cause of injury is ordinarily a question of fact for jury, to be determined in view of all the circumstances of the particular case.

5. **Master and servant** ⬅129(6) — **Defective coupler, co-operating to cause injury, is basis for recovery under federal Safety Appliance Act.**

Under federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), a defective condition of a coupler which co-operated to bring about injury complained of is ground for recovery.

<hr/>

**6. Death ☞86(2)—Minor children may recover for loss of care, counsel, advice, training, and education which they might have had from deceased parent.**

In action for death of switchman under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), minor children may recover for loss of care, counsel, advice, training (intellectual, moral and physical), and education, which during minority in all probability they might or would have received from parent, and which can only be supplied by the service of another for compensation.

**7. Master and servant ☞293(12)—Refusal of charges, making voluntary going between cars an element, not error.**

In action for death of switchman under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), refusal of charges that there could be no recovery unless deceased went between cars "voluntarily" to uncouple them *held* not error; requirement being that the coupler be defective and thereby co-operating proximate cause, and not the voluntary or involuntary act of going between cars.

**8. Master and servant ☞296(7)—Refusal of charge requiring reasonable necessity for switchman's going between cars to uncouple them not error.**

In action for death of switchman under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), refusal of a charge that there could be no recovery, unless there was a "reasonable necessity" for deceased's going between cars to uncouple them, *held* not error; contributory negligence being no defense, and liability attaching for a defect in the coupler even if deceased went between cars under a necessity that he merely thought existed and contrary to positive rules of railroad.

**9. Evidence ☞14—The court will take judicial notice of expectancy tables.**

The court will take judicial notice of a man's expectancy according to the mortality tables.

**10. Death ☞104(4)—Charge on element of damages in loss of parental care to children for death of switchman held adequate.**

In action for death of switchman, a charge to consider care one of decedent's disposition, character, habits, intelligence, and devotion to parental duty would reasonably be expected to give infant children during minority *held* to have sufficiently embraced a consideration of the expectancy of deceased, although it might have been supplemented on request by an explanatory charge.

**11. Evidence ☞553(4)—Hypothetical question should not contain elements of fact not shown by evidence.**

Hypothetical question should not contain elements of fact not shown by the evidence.

**12. Evidence ☞558(1)—Cross-examination as to whether coupling, if in good condition, would ever fail to work in pulling with all one's strength held not error.**

In action for death of switchman, cross-examination of defendant's witness as to whether a coupling lever in good condition ever got to where "you would work at it and pull with all your strength without lifting it," *held* proper.

**13. Death ☞95(2)—Expenses not spent on and for family deducted from earning capacity in determining compensation for death.**

In determining damages for death under federal Employers' Liability Act (U. S. Comp. §§ 8657–8665) and federal Safety Appliance Act (U. S. Comp. St. § 8605 et seq.), expenses of deceased which are not spent on and for his family will be deducted from his average earning capacity at death.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action for damages by Cora Lee Cornett, as executrix of the estate of W. H. Cornett, deceased, against the Alabama Great Southern Railroad Company. From a judgment for plaintiff for $25,000, defendant appeals. Affirmed.

The following charge was given at plaintiff's request:

"If you find for plaintiff in this case under the evidence and the charge of the court, you may take into consideration, in determining the amount of damages to be awarded, the care, attention, instruction, training, advice, and guidance which one of decedent's disposition, character, habit, intelligence, and devotion to his parental duties or indifference thereto, as shown by the evidence, would reasonably be expected to give to his infant children during their minority, and the pecuniary benefits therefrom to said children, and include the pecuniary value of the same in the damages assessed."

Charges 15 and 16, refused to defendant, are as follows:

"(15) The court charges the jury that, if they find from the evidence that plaintiff's intestate did not go between the cars voluntarily for the purpose of uncoupling the cars, then they cannot find for the plaintiff under count 10 of the complaint.

"(16) The court charges the jury that, unless they find from the evidence that the plaintiff's intestate went between the cars voluntarily for the purpose of uncoupling the same, they cannot find for the plaintiff because of any defect in the coupling."

Defendant's refused charges, made the bases of assignments 9 to 20, inclusive, seek to instruct against the awarding of any damages in some of said charges, or against the recovery of more than nominal damages in others, on behalf of decedent's minor children for the loss of care, instruction, training, advice, and guidance.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Charge 19, refused to defendant, is as follows:

"The court charges the jury that, if they find from the evidence that it was the duty of deceased to stop the train for the purpose of uncoupling cars, in the event the automatic coupler failed to work, and that this was a practice under existing conditions and circumstances, and that there was no reasonable necessity for the plaintiff's intestate to go between the cars for this purpose, then the court further charges the jury that they cannot find for the plaintiff because of any defect in the coupling."

Stokely, Scrivner, Dominick & Smith, and Andrew J. Thomas, all of Birmingham, for appellant.

The fact of an accident to an employé raises no presumption of negligence on the part of the employer, but such must be proved. St. L. & S. F. v. Dorman, 205 Ala. 609, 89 So. 70; Mathews v. A. G. S., 200 Ala. 251, 76 So. 17; Sou. Sewer Pipe Co. v. Caraway, 182 Ala. 669, 62 So. 527; Patton v. T. & P., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Koger v. Roden Coal Co., 197 Ala. 473, 73 So. 33; Chamberlain v. Sou. Ry., 159 Ala. 171, 48 So. 703. In an action under the federal Employers' Liability Act and the Safety Appliance Act for the death of a brakeman injured in coupling cars, plaintiff must prove the defective coupler proximately contributed to the accident. Lang v. N. Y. C., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729; St. L. & S. F. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290; G. N. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Kern v. Payne, 65 Mont. 325, 211 P. 767. Failure of a coupler to work in response to a single effort is insufficient evidence of an unlawful defect to show violation of the Safety Appliance Act. St. L. S. W. v. Bounds (Tex. Civ. App.) 244 S. W. 1099; Id. (Tex. Civ. App.) 266 S. W. 171. One presumption cannot be based upon another presumption. Gadsden Gen. Hosp. v. Bishop, 209 Ala. 272, 96 So. 145; U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707; Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564. Hypothetical questions should not contain elements of fact not shown by the evidence. Hilburn v. McKinney, 209 Ala. 229, 96 So. 61; Zimmern v. Standard Motor Co., 205 Ala. 580, 88 So. 743. Where it was merely conjectural whether death of the servant resulted from negligence for which the master was liable or from some other cause, there can be no recovery. Southworth v. Shea, 131 Ala. 419, 30 So. 774; American C. I. P. Co. v. Landrum, 183 Ala. 132, 62 So. 757; Smith v. I. C., 200 F. 553, 119 C. C. A. 33; Continental Cas. Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A. L. R. 802; Patton v. T. & P., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361.

Black & Harris, of Birmingham, for appellee.

The duty of railroads to furnish safe appliances is absolute. Liability does not hinge upon either fault or negligence. Assumption of risk and contributory negligence have no bearing upon suits under the Safety Appliance Act. St. L., I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; C., B. & Q. R. Co. v. U. S., 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582; T. & P. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874; St. J. & G. I. v. Moore, 243 U. S. 311, 37 S. Ct. 278, 61 L. Ed. 741; Philadelphia, etc., v. Eisenhart (C. C. A.) 280 F. 271; Barnes' Fed. Code (1919) 1929, 1937; 2 Roberts. Fed. Liab. Car., 1400, 1406; S. A. & A. P. v. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110; 35 Stat. 66. The act places the burden of injuries upon the employer. L. & N. v. Layton, 243 U. S. 617, 37 S. Ct. 456, 61 L. Ed. 931; St. L., I. M. & S. v. Taylor, supra. The carrier cannot nullify the act by promulgating rules wherewith to claim contributory negligence. Noel v. Quincy, etc. (Mo. App.) 182 S. W. 787. Failure of a coupler to work at any time sustains a charge of negligence. Taylor Case, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; C., B. & Q. v. U. S., supra: Northcutt v. Davis, 113 Kan. 444, 214 P. 1113. The doctrine of res ipsa loquitur applies to cases under the act. C. R. of N. J. v. Peluso (C. C. A.) 286 F. 661; M. & St. L. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995; Ridge v. N. & S., 167 N. C. 510, 83 S. E. 762, L. R. A. 1917E, 215; Lamb v. A. C. L., 179 N. C. 619, 103 S. E. 440; Overstreet v. N. & W., 238 F. 565, 151 C. C. A. 501. Where couplers fail to work, and a switchman is injured, the question of defective appliance is for the jury. Y. & M. V. v. Cockerham, 134 Miss. 887, 99 So. 14; Nichols v. C. & O., 195 F. 913, 115 C. C. A. 601; Payne v. Colvin (C. C. A.) 276 F. 15; T. A. & G. v. Drake (C. C. A.) 276 F. 393. Damages in this case follows the rule of the federal courts. C. & O. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. Damages include the elements of loss of care, training, etc. M. C. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; N. & W. v. Holbrook, 235 U. S. 625, 35 S. Ct. 143, 59 L. Ed. 392.

THOMAS, J. The case was submitted to the jury on count 10 as amended. Among other things it is therein averred:

"* * * Plaintiff's intestate was employed by the defendant as a switchman or switching foreman, and, while being so employed by the defendant in and about said interstate commerce, and while engaged in the actual performance of the duties of his employment by the defendant in and about said interstate commerce uncoupling cars for defendant in such interstate commerce, plaintiff's intestate was killed in Jefferson county, state of Alabama, as follows: A railroad car ran into, upon, or over plaintiff's intestate, and injured and killed him.

"Plaintiff further avers that the injury to and death of plaintiff's intestate was proximately

caused by the defendant, as such common carrier, hauling, or permitting to be hauled or used, on its line a car used in moving interstate traffic, not equipped with couplers which could be uncoupled without the necessity of men going between the ends of the cars.

"* * * The plaintiff, as such administratrix, sues the defendant herein for the use and benefit of Cora Lee Cornett, the widow, and of said children, the dependents of the deceased, and claims as additional and special damages for said children damages for the loss of the care, attention, instruction, training, advice, and guidance which they would have received during their minority from their father, W. H. Cornett, if he had not been killed as aforesaid."

The reply was the general issue.

It is the contention of the plaintiff that the deceased attempted to uncouple the Atlantic Coast Line car from the New York Central car; that, due to the defective condition of the coupler operated and controlled by the lift lever on the side of the Atlantic Coast Line car, he was unable to uncouple the cars; and thereupon he went between the cars for the purpose of uncoupling them, and, as a result, fell underneath the wheels of the cars. The position of the defendant is that there was no direct evidence as to the cause of the injuries to the deceased beyond the undisputed fact that decedent was run over by one of the cars; that it was not for the jury to conjecture as to the cause thereof; and that the plaintiff failed to sustain the burden of proof placed upon her to show that said injuries were caused by defendant hauling, or permitting to be hauled or used, on its line a car used in interstate commerce not equipped with couplers which could be uncoupled without the necessity of going between the ends of the cars in the discharge of the duty of uncoupling said cars.

Defendant concedes that at the time of the injuries to the deceased it was a common carrier by railroad, engaged in commerce between the states, and that at the time of his injuries the deceased was engaged in handling cars moving in interstate commerce, so that the provisions of the federal Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. § 8605 et seq.]) and the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. § 8657. et seq.]) have application to this cause of action. The contentions of the defendant as to this phase of the case are that the evidence failed to disclose a violation on its part of section 2 of the Safety Appliance Act (U. S. Comp. St. § 8606) to the effect that at the time of the injuries complained of it (defendant) was using a car with a defective coupler within the provisions of said act; and that, conceding that at the time of the injuries to deceased it was using a car with a defective coupler, plaintiff failed to discharge the burden of proof that such violation of the act proximately caused the injuries which resulted in the death of deceased.

The primary questions for decision are presented by the refusal to give the general affirmative charge at defendant's request, and the refusal to instruct the jury that plaintiff administratrix could not recover on behalf of the minor children of deceased on the "basis of loss of advice, care, instruction, training, and guidance" that said minors sustained as a result of the death of the father.

The Supreme Court of the United States has stated the reason for the enactment of the federal statute as follows:

"* * * The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. * * * It would be better, it was once said by Lord Eldon, to look hardship in the face rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interests of the employee and of the public. Where an injury happens through the absence of a safe drawbar there must be hardship. Such an injury must be an irreparable misfortune to someone. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words. * * *" St. L., I. M. & S. R. Co. v. Taylor, 210 U. S. 295, 28 S. Ct. 616, 621, 52 L. Ed. 1061, 1068.

The same finds support in S. A. L. R. Co. v. Padgett, 236 U. S. 668, 35 S. Ct. 481, 59 L. Ed. 777; M., St. P. & S. S. M. R. Co. v. Popplar, 237 U. S. 369, 35 S. Ct. 609, 59 L. Ed. 1000; U. S. v. Erie R. Co., 237 U. S. 402, 35 S. Ct. 621, 59 L. Ed. 1019; Arizona Copper Co. v. Hammer, 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537; Louisville & Jeffersonville Bridge Co. v. U. S., 249 U. S. 534,

39 S. Ct. 355, 63 L. Ed. 757, 759, and authorities collected.

[1] Under the federal statutes entering into the decision of this case, any misconduct of said intestate, being no more than contributory negligence, is excluded as a defense in bar to a recovery by the terms of the Employers' Liability Act (35 Stat. 66 [U. S. Comp. St. §§ 8657–8665] vol. 2, Roberts Fed. Liab. of Carriers, p. 1406, §§ 863–868), and by those of the Safety Appliance provisions, 27 Stat. 532 (U. S. Comp. St. § 8612); Barnes' Fed. Code (1919), pp. 1929, 1937, §§ 8030, 8071; Roberts Fed. Liab. of Carriers, p. 773 et seq.; Ala. & V. R. Co. v. Dennis, 128 Miss. 298, 91 So. 4. Pertinent observations of Mr. Justice Pitney are contained in San Antonio, etc., Co. v. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110, 1117.

[2] The common-law duty of due care is changed to that of an absolute duty in respects indicated by Congress. A failure of a coupler to work at any time when required or necessary held to sustain a charge of negligence or failure of statutory duty in the premises (Chicago, etc., Co. v. Brown, 229 U. S. 317, 33 S. Ct. 840, 57 L. Ed. 1204; C., B. & Q. R. Co. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582; St. L., etc., Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061); that is to say, this prescribed and required safety appliance must not only be provided, but duly maintained in condition for operation (L. & N. R. Co. v. Layton, 243 U. S. 617, 37 S. Ct. 456, 61 L. Ed. 931). When the statute is so understood, the conduct of plaintiff's intestate was immaterial, though in contravention to positive rules or instructions by defendant. Noel v. Q. O. & K. C. R. Co. (Mo. App.) 182 S. W. 787. There was no error in the court's rulings and refusal of charges as to the rules of defendant as affecting intestate's conduct in disregard of said rules and defendant's liability for injury inflicted while so disregarding the rules. Texas & P. R. Co. v. Rigsby, 241 U. S. 33, 39, 36 S. Ct. 482, 60 L. Ed. 874, 877.

In Minneapolis & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995, 996, Mr. Chief Justice White said:

"The jury, under an instruction of the court, was permitted to infer negligence on the part of the company from the fact that the coupler failed to perform its function, there being no other proof of negligence. It is insisted this was error, since, as there was no other evidence of negligence on the part of the company, the instruction of the court was erroneous as, from whatever point of view looked at, it was but an application of the principle designated as res ipsa loquitur, a doctrine the unsoundness of which, it is said, plainly results from the decisions in Patton v. Texas & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, and Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564, 19 Am. Neg. Rep. 627. We think the contention is without merit because, conceding in the fullest measure the correct-

ness of the ruling announced in the cases relied upon to the effect that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances, we are of opinion such principle is here not controlling in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars. St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 294, 295, 28 S. Ct. 616, 51 L. Ed. 1061, 1067, 1068, 21 Am. Neg. Rep. 464; Chicago, B. & Q. R. Co. v. United States, 220 U. S. 559, 575, 31 S. Ct. 612, 55 L. Ed. 582, 588; Delk v. St. Louis & S. F. R. Co., 220 U. S. 580, 586, 31 S. Ct. 617, 55 L. Ed. 590, 595; Texas & P. R. Co. v. Rigsby, 241 U. S. 33, 43, 36 S. Ct. 482, 60 L. Ed. 874, 878."

Thus was changed the rule declared in Patton v. Texas & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, and Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 58 L. Ed. 564. Under the evidence, or reasonable inferences to be drawn therefrom, the several affirmative charges requested were properly refused, and defendant's requested written charge No. 19 was refused without error.

[3] The overruling of the motion for a new trial was to say that the evidence was sufficient to show that the coupler failed to work at the time of the necessity therefor, and proximately contributed, or co-operated in contributing, to the injury of the switchman, and therefore warranted a verdict for plaintiff administratrix predicated on said defective appliance. The evidence was sufficient to discharge the burden of proof on the several questions entering into that inquiry of fact— the failure of the lift lever to successfully operate when intestate attempted to uncouple the cars, and that that defect, rather than the position of the cars at the moment of the attempt, was the cause of the injury to intestate. The evidence showed intestate, at or near his post of duty and the point of his death, and in the discharge of his duty signalling the engineer to back and to stop the train, and the fact that when he sustained his injury the cars were not uncoupled, and not thereafter until uncoupled on the other side as indicated by the witness. When these facts are considered, with the facts that immediately after the homicide there was an unsuccessful effort to uncouple the cars by means of the lift lever, and that the uncoupling was immediately and successfully effected on the opposite side when resort was had to the other lift lever, and the failure of the coupler to operate when thereafter inspected, it was a question for the jury under the federal statute. The fact of adverse and contradictory inferences as to the coupler being or not being defective did not authorize the giving of the affirmative instruction. Ala. State Land Co. v. Slaton, 120 Ala. 259, 24 So. 720; Porter v. L. & N. R. Co., 201 Ala. 469, 78 So. 375; B. R. L. & P. Co. v. Bason, 191 Ala. 618, 68 So. 49; Ledbetter v. St. Louis, etc., Co., 184 Ala. 457, 63 So. 987;

Southern Ry. Co. v. Cates, 211 Ala. 282, 100 So. 356; Sloss-Sheffield Co. v. Brooks, 204 Ala. 674, 87 So. 82; Bromley v. B. M. R. Co., 95 Ala. 397, 11 So. 341. The credibility of witnesses (Jones v. Bell, 201 Ala. 336, 77 So. 998), and the inferences to be drawn from the evidence are for the jury (McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135).

[4, 5] It is necessary to say something of the insistence of failure to discharge the burden of proof as to the proximate cause of the injury, and therefore the affirmative charge should have been given for the defendant, and it should be said that the true rule in that behalf is that causal connection or proximate cause of an injury is ordinarily a question of fact for the jury (Milwaukee, etc., R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Donegan v. B. & N. G. R. Co., 165 F. 869, 871, 91 C. C. A. 555), and the same is to be determined by the triors of the fact in view of all the circumstances of the particular case (St. Louis & S. F. R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290; The Eugene F. Morgan, 212 U. S. 466, 29 S. Ct. 339, 53 L. Ed. 600; Lang v. N. Y. C. R. Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729; G. N. R. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 So. 77; E. T. V. & G. R. Co. v. Lockhart, 79 Ala. 315; T. A. & G. R. Co. v. Drake [C. C. A.] 276 F. 393, 394; Ala. & V. R. Co. v. Dennis, 128 Miss. 298, 91 So. 4; Milwaukee, etc., Co. v. Kellogg, 94 U. S. 439, 24 L. Ed. 256; 7 L. R. A. [N. S.] 1183, note).

In the foregoing authorities will be found the rule of causal connection and proximate cause obtaining in this jurisdiction, and in cases under the Safety Appliance Act of Congress.

The rule of the federal cases is that, if the defective condition or maintenance of the coupler co-operated to bring about the result and injury complained of, the plaintiff is entitled to recover. G. T. W. R. Co. v. Lindsay, 201 F. 836, 120 C. C. A. 166; Smith v. A. C. L. R. Co., 210 F. 761, 127 C. C. A. 311; Erie R. Co. v. Schleenbaker, 257 F. 667, 670, 168 C. C. A. 617; Donegan v. B. & N. Y. Ry. Co., 165 F. 869, 871, 91 C. C. A. 555. Such is the rule of proximate cause in this jurisdiction. E. T. V. & G. R. Co. v. Lockhart, 79 Ala. 315; Armstrong v. M. St. Ry. Co., 123 Ala. 233, 26 So. 349; Briggs v. B. Ry. L. & P. Co., 188 Ala. 262, 66 So. 95; Seaboard Air Line R. Co. v. Standifer, 190 Ala. 260, 67 So. 391; Woodward Iron Co. v. Gamble, 203 Ala. 20, 81 So. 810; L. & N. R. Co. v. Clark, 205 Ala. 152, 87 So. 676, 14 A. L. R. 695; Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 So. 77.

The evidence, under the rule of Minneapolis & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995, 996, and U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707, did not show the grounding of an inference on an inference as was the case in Gadsden Hospital v. Bishop, 209 Ala. 272, 96 So. 145, or a mere speculation, as in C. of Ga. Ry. Co. v. Teasley, 187 Ala. 610, 65 So. 981. The evidence shows that deceased undertook to uncouple the cars; that that was his duty, and he was so engaged, gave the signals to the engineer, was seen between the cars, and his lantern was thrown or fell out from between the cars. The lift lever did not work immediately thereafter until several efforts, and the cars were uncoupled from the other side by use of the lift lever.

It is true there was evidence for defendant that immediately after the accident there was a footprint at the frog in the track, as that a "man's toe had dug out" the dust or dirt; that there was blood on the rail; and that extended from the body backwards in the direction of the frog, or from where the train of cars was moved; that the frog was so maintained or constructed as to make possible the catching of one foot therein, the location of the frog with reference to the body and blood upon the railroad track, etc. It was for the jury to infer that, if the plaintiff's intestate had fallen between the cars by reason of having his foot caught or tripped by the frog, how the other evidence can be reconciled therewith or what of two reasonable inferences from the evidence to adopt or on which to predicate a verdict. The other evidence concerned the physical conditions of the train, the uncoupling and position of the body, coupling immediately after the homicide, the answer of Ford that he saw intestate sign the engineer down, just like a man will in ordinary work look off and look back, saw the switchman's lantern or lamp fall out from between the cars to the middle of the south car track, ran there and found the body as indicated on the track; and the answers of the witness as follows:

"Answering the question, 'When you saw him give this signal to stop, was he then between the cars or on the outside, waiting for the cars,' I say, 'No, sir.' Answering the question, 'He wasn't inside of the train,' I say, 'Yes, sir.' The next time I saw him I just saw the light come out from between the cars. I don't know how he got there; I didn't see them or know how it happened at all."

The witness then testified on cross-examination:

"I seen the light. I can swear I seen the light come over like that (illustrating) and fell right down between the cab track."

That witness further said the light was in the man's hand and came out from between the cars, and that the height thereof "was just about like a man standing up, the light was about like this when it fell down, just about like this." It was for the jury to say what the witness meant by his expression used by way of illustration, "light come over like that," and "fell down just about

like that." These demonstrations were seen by the court and jury, which is not possible for us. These demonstrations were, as are all ocular demonstrations, for the jury. J. H. Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46, 51; Schmidt v. M. L. & R. Co., 204 Ala. 694, 87 So. 181; Fayet v. St. L. & S. F. R. Co., 203 Ala. 3, 81 So. 671; Southern R. Co. v. Wyley, 200 Ala. 14, 75 So. 326; L. & N. R. Co. v. Jenkins, 196 Ala. 136, 72 So. 68; B. R. L. & P. Co. v. Canfield, 177 Ala. 422, 59 So. 217.

The evidence exhibited by the bill of exceptions was sufficient for the jury to find intestate was trying to uncouple the cars, and that he came to his death while so endeavoring, rather than from the fall between the cars by reason of the frog on the track. Thus is this case materially different from that of Am. Cast I. P. Co. v. Landrum, 183 Ala. 132, 136, 62 So. 757, and St. L. & S. F. R. Co. v. Dorman, 205 Ala. 608, 89 So. 70. And this foundation in the testimony for the conclusion of the jury is aided by the rule applied in Minneapolis, etc., Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995, 996.

[6] The measure of damages in the premises is a part of the right of action under the federal Employers' Liability Act as amended (U. S. Comp. St. §§ 8657–8665), and must be administered according to the general principles held applicable in the federal courts. C. & O. R. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. The damages awarded are compensatory to the beneficiaries named in the act of Congress. And as elements of damage the future benefits are estimated from the evidence in terms of present or cash value thereof. Michigan Central Railroad Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; C. & O. R. R. Co. v. Kelly, supra; K. C. S. Ry. Co. v. Leslie, 238 U. S. 599, 35 S. Ct. 844, 59 L. Ed. 1478, 1480; Roberts' Fed. Liab. of Carriers, § 618. That is to say, the present cash value of the "future benefits of which the beneficiaries were deprived by the death, making adequate allowance, according to circumstances, for the earning power of money," is a measure of damages or recovery declared in an action against an interstate railway carrier under the federal Employers' Liability Act (35 Stat. at L., 65, c. 149), as amended (36 Stat. at L., 291, c. 143 [U. S. Comp. St. § 8662]), for the benefit of the widow and dependent children of the employee killed while engaged in interstate commerce (C. & O. R. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; C. & O. R. R. Co. v. Gainey, 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124; L. & N. R. Co. v. Holloway, 246 U. S. 525, 38 S. Ct. 379, 62 L. Ed. 867), and damages for conscious pain and suffering may be recovered under the act (N. O. & N. E. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535,

62 L. Ed. 367; Roberts' Fed. Liab. of Carriers, § 608).

In L. & N. R. Co. v. Porter, 205 Ala. 131, 132, 87 So. 288, it is said, concerning damages that are recoverable under the federal Employers' Liability Act at the suit of the parent, the damages extend to the pain and suffering of the decedent son while conscious, the pecuniary loss estimated by the parent by reason of the death, and as a basis for such ascertainment the jury may consider "evidence of the age, probable duration of life, habits, means, earnings, health, skill, and character of deceased, his reasonable future expectations, and other like facts." Authorities are cited in Alabama Co. v. Brown, 207 Ala. 29, 92 So. 490; Ala. F. & I. Co. v. Minyard, 210 Ala. 299, 97 So. 918 et seq. Such is the federal rule (C. & O. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367), with the additional elements of damages (if claimed) to the minor children during minority, for the failure and deprivation of parental care, consideration, and guidance during the period of minority.

In Norfolk & Western R. Co. v. Holbrook, 235 U. S. 625, 629, 35 S. Ct. 143, 144, 59 L. Ed. 392, it is said:

"In the present case there was testimony concerning the personal qualities of the deceased and the interest which he took in his family. It was proper, therefore, to charge that the jury might take into consideration the care, attention, instruction, training, advice and guidance which the evidence showed he reasonably might have been expected to give his children during their minority, and to include the pecuniary value thereof in the damages assessed. * * * The ascertained circumstances must govern in every case."

In Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 73, 33 S. Ct. 192, 197, 57 L. Ed. 417, 423, Ann. Cas. 1914C, 176, it is declared by Mr. Justice Lurton:

"A minor child sustains a loss from the death of a parent, and particularly of a mother, altogether different from that of a wife or husband from the death of the spouse. The loss of society and companionship, and of the acts of kindness which originate in the relation and are not in the nature of services, are not capable of being measured by any material standard. But the duty of the mother to minor children is that of nurture, and of intellectual, moral, and physical training, such as, when obtained from others, must be for financial compensation. In such a case it has been held that the deprivation is such as to admit of definite valuation, if there be evidence of the fitness of the parent, and that the child has been actually deprived of such advantages. Tilley v. Hudson R. Co. [24 N. Y. 471] and Lett v. St. Lawrence & O. R. Co. [11 Ont. App. Rep. 1] both cited above. If the case at bar had been of such a character, the loss of 'care and advice' might have been a proper matter for compensation.

"* * * But there was neither allegation

nor evidence of such loss of service, care, or advice; and yet, by the instruction given, the jury were left to conjecture and speculation. They were told to estimate the financial value of such 'care and advice from their own experiences as men.' These experiences, which were to be the standard, would, of course, be as various as their tastes, habits, and opinions." Am. R. Co. v. Didricksen, 227 U. S. 145, 33 S. Ct. 224, 57 L. Ed. 456; K. C. S. R. Co. v. Leslie, 238 U. S. 599, 35 S. Ct. 844, 59 L. Ed. 1478; Garrett v. L. & N. R. Co., 235 U. S. 314, 35 S. Ct. 32, 59 L. Ed. 245; Shewalter v. C. C. & O. R. Co., 239 U. S. 60, 36 S. Ct. 166, 60 L. Ed. 476.

This is not a double recovery sought by the administratrix. In St. L., I. M. & S. Ry. Co. v. Craft, 237 U. S. 648, 658, 35 S. Ct. 704, 706, 59 L. Ed. 1160, 1164, it is said:

" * * * And when this provision and section 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived. Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong. * * *

"Much stress is laid upon the concluding clause in the new section, 'but in such cases there shall be only one recovery for the same injury.' Passing and reserving the question of its application where there has been a recovery by the decedent in his lifetime (see Michigan Central R. R. Co. v. Vreeland, supra [227 U. S.] p. 70 [33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176]), we think this clause, as applied to cases like the present, is not intended to restrict the personal representative to one right to the exclusion of the other, or to require that he make a choice between them, but to limit him to one recovery of damages for both, and so to avoid the needless litigation in separate actions of what would better be settled once for all in a single action."

It is further declared that a pecuniary loss or damage that is recoverable must be such as may be measured by a recognized standard. As judicially interpreted and adopted it includes the loss of services "of husband, wife, or child," or, when a child is the beneficiary, it includes the loss of care, counsel, advice, training (intellectual, moral and physical) and education which the child might, and in all probability would, have received under the evidence from the deceased "parent, and which can only be supplied by the service of another for compensation." Michigan Central R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, 422, Ann. Cas. 1914C, 176.

There was no error in refusing to give written charges requested by defendant numbered B, M, C, D, L, J, K, F, I, G, H, and E, covered by assignments of error numbered 9 to 20, inclusive. So also the giving, at plaintiff's request, of written charge set out in assignment of error numbered 21.

[7] There was no error in refusing requested charges 15 and 16. The use of the misleading word "voluntarily" justified the refusal of these charges under the evidence. The requirement of the law is that the jury must find the coupler was defective, and thereby a co-operating proximate cause of the injury, and not the voluntary or involuntary act of going between the cars.

[8] The use of the words "reasonable necessity" rendered the refusal of charge numbered 19 without error. If intestate went between the cars under a necessity that he thought existed, and contrary to positive rules of the defendant company, if there was defect in the coupler, he would be entitled to recover. We have indicated that under the act of Congress negligence is not a defense to the action. So violation of rules is not defensive matter in such action. There was no error in sustaining objection to the question to Mr. Watts as to giving out rule books and the examination of employees thereon. The rules being without weight as evidence, the elimination thereof was without prejudicial effect to defendant.

[9, 10] We have indicated that the language of plaintiff's given charge was that of the opinion in Norfolk & Western R. Co. v. Holbrook, 235 U. S. 625, 35 S. Ct. 143, 59 L. Ed. 392. The measure of said element of damages for the deprivation of the parental care, attention, instruction, training, advice, and guidance must take into account the expectancy of plaintiff's intestate. His age being given (34 years at the time of his death), we take judicial knowledge of his expectancy according to the mortality table as being 32½ years. The youngest child was 1 year of age at the time of the trial; the second 3; and the oldest 10. The charge requested was given in the light of this evidence, and contains the proper limitation as to what care, etc., one of decedent's "disposition, character, habits, intelligence, and devotion to his parental duties would reasonably be expected to give his infant children during their minority." If this charge was thought to be susceptible of misleading tendency as to whether it took into consideration the expectancy of the deceased, the same might have been supplemented on request by an explanatory charge. In the context, and under the evidence, it was plain that the care, attention, advice, and guidance of said minor children by the father could only extend during the period of minority of the youngest

child, and not exceed the period of his expectancy, had not the same been cut short by the injury proximately causing his death.

[11, 12] The witness Dorough for defendant had testified of the operation of the coupler and the nature of the place of the injury, and he then testified, among other things:

"I am inclined to believe that there is enough grade there that each car would have a strain or a tendency to tighten all draft gear. They set the engine brakes to hold the cars. I think I can tell the jury what makes the coupling hard to work, to operate, when another car is pulling on it. That knuckle lock place in here, when all the slack is taken out, you can't raise this lever here without any unusually hard jerk. If the slack is taken out, it will operate easy. It operates easier when the slack is taken out. If the cars are in a pulling position, the chances are you couldn't raise that at all, and that wouldn't be defective by any means. That was the real safe feature of it. I didn't try to work the lever during the time the cars were connected. I wasn't there at the time the cars were connected. I examined the lever after the cars were disconnected and at that time it was absolutely perfect. No repairs had been made on that car after that time, before I examined it. No repairs were made at all."

On cross-examination this witness stated:

"The car I was told caused Mr. Cornett's death the next morning was on the repair tracks at the Thirty-Seventh street yard. I was there. As to whether a number of men came up and handled the lever, I say, 'I don't recall anybody except the regular force there that worked on the repair tracks.' The lever worked just perfectly; wasn't any trouble in the world to move it. You could take your hand and move it up and down without any difficulty. That was the way it should have worked. If it was in good condition you are supposed to take your hand and work it easily, without any extraordinary force; that is right. When one is in good condition it always works freely."

The bill of exceptions then recites:

"Thereupon plaintiff's counsel asked the witness the following question: 'It never does get to where, if it is in good condition, that you would work at it and pull with all your strength and not be able to lift it, does it?"

This was not calling for the expert testimony of Dorough, but a proper testing of the witness as to the evidence given. It is true that a hypothetical question should not contain elements of fact not shown by the evidence (Hilburn v. McKinney, 209 Ala. 229, 96 So. 61; Zimmern v. Standard Motor Co., 205 Ala. 580, 88 So. 743), yet the fact inquired about was within the effect of evidence theretofore given by the witness. The witness Holton ·had testified he tried hard to raise the lever, and that he was "unable to raise it the first effort" he "made with" his "strength." "I answered on two different occasions." Though there was nothing in the evidence to show a comparison of the strength of Dorough and Holton, it was plain

to the witness, and the jury, that the question, "Pull with all your strength and not be able to lift it," was referred to the ordinary strength of a man. The witness so understood, and answered, "Why, sure, * * * a man of ordinary strength can lift it up, if it is loose from any other car, if it is all right," etc. The same inquiry was further pursued and answered by the witness as to the disconnected car, and the strength that was required to lift it if there was nothing wrong with the coupler of the make indicated.

The same reasoning applied to the cross-examination of the witness Glenn. That witness had testified on cross-examination:

"The first thing I done I went to the yard office. Later I pulled at the lever on the side of the Atlantic Coast Line car. I tried to cut that car. I pulled at it three or four times. I pulled at it three or four times and couldn't cut it. I told the negro Will King to go around on the other side to see if he could cut that engine. I seen him when he started around there, after I told him. I didn't see him pull that lever on the New York Central car. Answering the question, 'We are assuming any car is standing still on a track, disconnected from anything, and you want to pull the lever to the coupler of a Towers coupler, can you pull that easily, or does it require a great deal of force,' I say, 'Any of them are liable to do it. If they are in good condition any of them will open when you pull it. Sometimes the knuckles won't work, there is a kind of lock in this particular kind of knuckle that they won't work.' It doesn't make it dangerous to pull but harder to work sometimes. As to whether the Towers coupler is harder to work than others, I say, 'Some others are just as hard as it is.' "

The bill of exceptions then recites:

"Thereupon plaintiff's counsel asked the witness the following question: 'Assuming a car is standing still on the track, and there is a Towers' coupler attached to, it, and you go up there to pull it and you fail to be able to pull it with all your strength, would you say that was in good condition or bad condition?' "

The witness' answer to the question objected to was: "I don't know about that." There was no reversible error in permitting the answer over defendant's objection. There was no motion to exclude as not being responsive.

The leading case in this jurisdiction relating to improper arguments of counsel is B. R. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543; Milton v. State, (Ala. Sup.) 105 So. 209;[1] Ala. Power Co. v. Goodwin, 106 So. 239.[2] There is no iron-bound rule. Anderson v. State, 209 Ala. 36, 95 So. 171. The arguments to which exceptions were taken were not within the rule of the later cases cited where there was a prejudicial reference to class prejudice (Watts v. Espy, 211 Ala. 502, 101 So. 106), or a prejudicial statement of fact not in evi-

---

[1] 213 Ala. 449.　　[2] Ante, p. 15.

dence. In Davis v. Quattlebaum, 210 Ala. 242, 97 So. 701, a statement of fact without the record was considered. In Watts v. Espy, 211 Ala. 502, 101 So. 106, a statement of fact not of record, and appeal to class prejudice. A. G. S. R. Co. v. Grauer, 212 Ala. 197, 102 So. 125, a mere general observation or opinion of counsel, such as that considered in Alabama Power Co. v. Goodwin, supra.

[13] Amended count 10 sufficiently claimed the several elements of damage indicated and recoverable under the acts of Congress having application. This court takes judicial knowledge of the mortality tables, and under the evidence the expectancy of the deceased was 32 years and some months. The undisputed evidence shows his average earning capacity at death to have been $184 per month. From this will be deducted his expenses not spent on and for his family within the rule of the cases obtaining in this jurisdiction.

We find no reversible error on the trial or ruling on the motion for a new trial. The judgment of the circuit court is affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.